UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| INDEPENDENT TECHNOLOGIES, LLC, a Delaware Corporation, d/b/a ANOVA,<br><br>Plaintiff,<br><br>vs.<br><br>OTODATA WIRELESS NETWORK, INC., a Quebec, Canada Corporation, et al.,<br><br>Defendants. | 3:20-cv-00072-RJC-CLB<br><br>**ORDER** |

Plaintiff moves this Court to issue a preliminary injunction preventing Defendants from profiting off of its allegedly misappropriated trade secrets. The Court finds that a preliminary injunction is appropriate, and therefore grants the motion.

**I.  FACTS AND PROCEDURAL HISTORY**

Plaintiff designs, manufactures, and sells remote tank monitoring devices, which affix to a tank and monitor the amount of fuel in it. (ECF No. 3 Ex. 11 at ¶ 4.) Plaintiff asserts that its success relies on "its customer base by maintaining existing customer relationships and bringing in new customers through technological innovation and superior customer service." (*Id.* at ¶ 30.)

As part of Plaintiff's sales team, it employed Defendants Steven and Brian Rechenmacher (who are father and son) as sales representatives for the western region of the United States. (ECF

No. 3 Ex. 11 at ¶ 6.) Defendants had worked for Plaintiff (and its predecessors in interest) for approximately fifteen years. (*Id.*) As part of their job responsibilities, Defendants Steven and Brian Rechenmacher were privy to valuable trade secrets including "[Plaintiff's] current and prospective customers, technology, product deployment strategies, marketing strategies, product trials, and customer profitability information." (ECF No. 3 Ex. 26 at 2.)

To protect this sensitive information, Plaintiff has its employees sign confidentiality agreements. Included in these agreements is the statement that employees "will have access to technical and nontechnical, confidential and proprietary information concerning these activities, including research and development work, new product design and other confidential and proprietary information originating from [Plaintiff]" and that the employee promises "not to utilize any such confidential and proprietary information as described above for [his] own or another's direct or indirect benefit or to disclose such information to which [he] may have access, outside [Plaintiff] unless [he] is specifically authorized to do so by [Plaintiff's] officer." (ECF No. 3 Ex. 12 at ¶¶ 2–3.) Additionally, its employee manual categorizes "[d]isclosure of confidential information or trade secrets to unauthorized persons" as a "Major Violation" that "cannot be tolerated" and "may preclude continued employment of an employee." (ECF No. 3 Ex. 14 at 23.)

Plaintiff has presented to the Court a copy of a signed employee confidentiality agreement from Defendant Brian Rechenmacher, (ECF No. 3 Ex. 13), but not one for Defendant Steven Rechenmacher. Additionally, there are no non-compete agreements between the parties.

On December 23, 2019, both Defendants Steven and Brian Rechenmacher submitted separate notices of their intent to resign from their positions with Plaintiff. (ECF No. 3 Ex. 11 at ¶ 12.) Following two weeks paid vacation, they each had an exit interview with Plaintiff, where they acknowledged that they intended to abide by their continuing obligations of confidentiality. (*Id.* at ¶¶ 12–13; ECF No. 3 Ex. 15.) On January 6, 2020, they officially ended their employment

with Plaintiff and subsequently began working for Plaintiff's competitor, Defendant Otodata Wireless Network, Inc. (Otodata), a Canadian corporation.

Plaintiff's computer records show that, in the weeks leading up to their departure, Defendants Steven and Brian Rechenmacher began collecting information from Plaintiff:

- Defendant Steven Rechenmacher ran a report of all of Plaintiff's customers' information in a printable or downloadable PDF. (ECF No. 3 Ex. 25 at ¶ 4.)

- Defendant Steven Rechenmacher forwarded from his employee email address (steve.rechenmacher@anova.com) to a personal email address (steve@advacts.com) information—including a list of clients and potential clients with their contact information. (ECF No. 3 Ex. 11 at ¶ 16, Ex. 18.)

- Plaintiff maintained an internal software platform containing detailed non-public information. In a three-week period, Defendant Steven Rechenmacher viewed nearly twice as many pages as he had in the six-year period prior to that time. Defendant Brian Rechenmacher's logs also show a similar spike in activity. (ECF No. 3 Ex. 26 at 4, Ex. 19.)

- Defendant Steven Rechenmacher's account on Plaintiff's website was accessed three times from Canada. (ECF No. 3 Ex. 26 at 3.)

- On Defendant Steven Rechenmacher's last day of employment with Plaintiff he forwarded an email from steve.rechenmacher@anova.com to his new Otodata employee email address (srechenmacher@otodatatankmonitors.com) a large volume of information—including sixteen customer deployment reports and sixteen Microsoft Excel files providing the underlying data for the deployment reports. (ECF No. 3 Ex. 26 at 4–5, Ex. 16, Ex. 17.)

Two days after Defendants Steven and Brian Rechenmacher officially resigned, Plaintiff began sending cease-and-desist letters to all three Defendants. (ECF No. 3 Ex. 2, Ex. 3, Ex. 6, Ex. 8.) The letters alleged misappropriation of trade secrets and detailed some of the evidence above. In the letters, Plaintiff demanded that Defendants deliver a copy of all information in their possession and to also permanently delete any copies. (*See,* e.g., ECF No. 3 Ex. 2.)

In response to this request, the Defendants claim that they have had their computer systems forensically wiped to erase any of Plaintiff's information from their systems. Defendant Steven Rechenmacher avers that he had another one of his sons perform an erasure of his computer to

delete all files related to Plaintiff, shredded all physical copies of Plaintiff's information, and sent Plaintiff back its personal property on January 11, 2020. (ECF No. 70 Ex. 3 ¶ 35.) Similarly, Defendant Otodata had its computer system forensically examined by Sirco Investigation & Protection (Sirco). Sirco purportedly deleted records from Defendant Otodata's systems. (*See* ECF No. 50 Ex. 1 at ¶ 17.) Despite Defendants initially denying possessing a copy of these documents, (*Id.* at ¶ 19), Sirco retained a sealed copy of the documents, (ECF No. 66 Ex. 1, 14:8–14).

Defendants deny any wrongdoing and claim not to possess any of Plaintiff's confidential information. (ECF No. 3 Ex. 5, Ex. 9; ECF No. 4 Ex. 10.) Defendants Steven and Brian Rechenmacher further claim that they were innocently compiling the data to show Plaintiff's upper management that they were performing well. (*See, e.g.*, ECF No. 70 Ex. 2 ¶ 4.)

On January 24, 2020, Plaintiff learned from an existing client that Defendant Steven Rechenmacher was soliciting the client's business using insider knowledge—including which of Plaintiff's models will need to be replaced. (ECF No. 3 Ex. 26 at 5; ECF No. 4 Ex. 24.) Shortly thereafter, Plaintiff brought this suit alleging that Defendants misappropriated their trade secrets under federal and Nevada state law, that Defendants Steven and Brian Rechenmacher breached their fiduciary duties and employment contracts, and that Defendant Otodata aided and abetted the breaches of fiduciary duty. (ECF No. 1.)

The Court heard this evidence and found good cause to extend the temporary restraining order until March 23, 2020, where the Court would entertain further evidence from declarations and cross-examinations of witnesses in regard to the motion for preliminary injunction. (ECF No. 60.) The Court also ordered the parties to exchange client lists so the Court might be able to tailor any preliminary injunction it issues. (*Id.*) However, with the current events regarding COVID-19, the parties have stipulated to conduct the hearing telephonically with supplemental briefs and declarations instead of the live examinations of witnesses. (ECF No. 78.)

After the initial hearing, Defendants filed an emergency motion retracting some of their previous affirmations upon counsel examining the retained copy of the Sirco documents. (ECF No. 74.) The motion retracted some previous denials and now admits that Defendant Steven Rechenmacher utilized Plaintiff's information and that some of Defendant Otodata's agents saw this information. (ECF No. 74 Ex. 3.)

The Sirco documents show that Defendant Steven Rechenmacher was talking with Defendant Otodata's agents from October 2019 to January 2020 including its CEO, Mr. Andre Boulay, and its vice president of sales, Mr. Sean Hughes. (ECF No. 74.) For example, in an email dated November 8, 2019, Defendant Steven Rechenmacher sent Mr. Hughes confirmation that he and his son did not have non-compete agreements with Plaintiff and stated that he had found two clients for Defendant Otodata. (ECF No. 74 Ex. 6.) While agents of Defendant Otodata did not request the information in these recently disclosed records, they never notified Plaintiff. (ECF No. 80 at ¶ 18.) Nonetheless, Defendants still maintain that Defendant Brian Rechenmacher honored his confidentiality agreement. (ECF No. 74 Ex. 3 at 9:2–3.)

Additionally, these records also show that Defendant Steven Rechenmacher signed a "Mutual Nondisclosure Agreement" with Defendant Otodata stating, "The disclosing party hereby warrants that it has the right to disclose such information to the receiving party." (ECF No. 74 Ex. 5 at ¶ 1.) From this statement, Defendant Otodata argues it reasonably believed that the information Defendant Steven Rechenmacher sent to it was not confidential. (ECF No. 81 at 7:19–21.)

Plaintiff has filed an emergency motion requesting leave to file a supplemental brief. This brief argues that the recently discovered electronically stored information warrants an adverse inference against Defendants finding that they do possess Plaintiff's stolen confidential, proprietary, and trade secret information. (ECF No. 74.) The Court grants leave to file this motion, per the stipulation, and will consider these arguments. (ECF No. 78).

## II. LEGAL STANDARD

A court should grant a preliminary injunction when the moving party shows that an analysis of the following four factors favors enjoining the nonmovant: (1) likelihood of success on the merits, (2) likelihood of irreparable harm, (3) degree of hardship to the parties, and (4) public interest. *Winter v. NRDC*, 555 U.S. 7, 19–23 (2008). If the moving party is only able to establish "serious questions going to the merits," as opposed to a likelihood of success, he can still satisfy his burden by showing that the other three factors weigh towards granting the injunction and the balance of hardships "tips sharply" in that direction. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). In granting an injunction, the court may require a security to "pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## III. ANALYSIS

Applying this test, the Court finds that a preliminary injunction is appropriate to protect Plaintiff's trade secrets.

### A. Likelihood of Success on the Merits

In two of its claims, Plaintiff asserts that Defendants misappropriated Plaintiff's trade secrets in violation of the Defend Trade Secrets Act (DSTA) and Nevada Uniform Trade Secrets Act (NUTSA). Plaintiff will succeed on both claims if it proves that Defendants misappropriated its trade secrets either through use or disclosure in contravention of a contract or duty not to disclose. 18 U.S.C. § 1836; *Switch Ltd. v. Fairfax*, No. 2:17-cv-02651-GMN-VCF, 2018 WL 4181626, at *3 (D. Nev. Aug. 30, 2018); *Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000).

A trade secret is information that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means

by the public or any other persons who can obtain commercial or economic value from its disclosure or use" and is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." NRS 600A.030(5). In addition to improper disclosure of a trade secret, receipt of a trade secret qualifies as misappropriation when the recipient knew or had reason to know that the secret was "[d]erived from or through a person who had used improper means to acquire it." NRS 600A.030(2)(c)(I).

Plaintiff has shown that it will likely prove these elements. Plaintiff's client information, deployment records, and product pilot programs derive economic value through not being readily available to the public, and Plaintiff keeps the information private by only giving access to employees. (ECF No. 3 Ex. 11 at ¶ 8.)

Additionally, Plaintiff's employees are subject to a fiduciary duty not to disclose trade secrets. The employee manual calls dissemination of confidential information a "Major Violation." (ECF No. 3 Ex. 14.) Plaintiff has the employees sign confidentiality agreements, which at least Defendant Brian Rechenmacher signed. (ECF No. 3 Ex 13.) Both Defendants Steven and Brian Rechenmacher acknowledged that they had duties to continue to keep Plaintiff's trade secrets private. (*Id.* at ¶ 12–13; ECF No. 3 Ex. 15.) Despite this acknowledgment, the evidence before the Court shows that Defendants Steven and Brian Rechenmacher violated this duty by taking the information with them to Defendant Otodata.

Furthermore, Plaintiff has shown that Defendant Otodata likely misappropriated the trade secrets by acquiring them through improper means. After Defendants Steven and Brian Rechenmacher gave notice of their intent to resign from Plaintiff, they began accumulating Plaintiff's confidential information including at least one email containing confidential information sent directly to Defendant Otodata and began working for Defendant Otodata immediately after resigning from Plaintiff. (ECF No. 3 Ex. 26 at 4–5, Ex. 16, Ex. 17.)

Additionally, the recently produced emails from Defendants confirm that at least Defendant Steven Rechenmacher identified potential clients for Defendant Otodata's agents and shared Plaintiff's confidential information with those agents. (*See, e.g.*, ECF No. 74 Ex. 6.) The day that the computer records show that Defendant Steven Rechenmacher accessed client information from Plaintiff's network, he emailed "some of his best customers" to Mr. Hughes and cc'ed Mr. Boulay naming nine of Plaintiff's clients asking for business cards, "demo kits," and a company credit card to solicit their business. (ECF No. 75 Ex. 8.)

While the evidence is less compelling for Defendant Brian Rechenmacher, the Court finds that Plaintiff's case against him is still likely to succeed. He worked with his father as a team before and after switching employment to Defendant Otodata. (*See* ECF No. 70 Ex. 2 ¶ 5.) Accordingly, any information that his father has access to, he has access to as well. Even more, he admits that he helped his father compile the data from Plaintiff's systems in December 2019. (*Id.* at ¶ 4.)

The Court finds that Defendants Steven and Brian Rechenmacher's story that they were merely compiling Plaintiff's confidential information as part of an innocent project to show upper management their value to the company to be unpersuasive. First, the upper management claims that they never heard of their endeavor. (ECF No. 80 at ¶ 20.) Second, the emails from Defendant Steven Rechenmacher to Defendant Otodata confirm that there was intent to use the information to solicit Plaintiff's customers.

Accordingly, Plaintiff has shown that it is likely to succeed on this cause of action against all of the parties. Success on this cause of action will entitle Plaintiff to the relief sought in this motion; thus, the Court finds that Plaintiff has satisfied a likelihood of success on the merits.

**B.  Likelihood of Irreparable Harm**

Plaintiff has shown a likelihood of irreparable harm. It is well-established that loss of trade secrets constitutes irreparable harm to a party's business and reputation. *See, e.g.*, *WeRide Corp.*

*v. Kun Huang*, 379 F. Supp. 3d 834, 853 (N.D. Cal. 2019); *Planned Parenthood of Great Nw. & Hawaiian Islands, Inc. v. Azar*, 352 F. Supp. 3d 1057, 1065 (W.D. Wash. 2018). However, Defendants claim that they have deleted all the protected confidential information that Defendants Steven and Brian Rechenmacher accumulated from Plaintiff. (ECF No. 70 Ex. 3 at ¶ 35.)

Plaintiff argues the record, including the recently discovered emails, shows that Defendants likely still possess Plaintiff's trade secrets. (ECF No. 74 Ex. 2.) Further, Plaintiff contends that the deletion of the evidence without providing it a copy or preserving a copy of the documents constitutes spoliation entitling it to an adverse inference that Defendants still possess Plaintiff's trade secrets for the purposes of this motion. (*Id.*)

Based on the record, the Court finds sufficient evidence to conclude Defendants still possess Plaintiff's trade secrets. Defendant Steven Rechenmacher purportedly deleted all of the records from Plaintiff on January 11. (ECF No. 70 Ex. 3 ¶ 35.) However, there is evidence that he solicited Plaintiff's client using insider knowledge of which of Plaintiff's clients will have soon-to-be-outdated technology. (ECF No. 3 Ex. 26 at 5; ECF No. 4 Ex. 24.) Accordingly, the Court finds that Defendants' still have access to Plaintiff's trade secrets.

Turning to spoliation, the Court finds that Defendant Steven Rechenmacher did spoliate information, which constitutes a further basis for satisfaction of this element by granting Plaintiff an adverse inference. In 2015, Federal Rule of Civil Procedure 37(e) was substantially amended to accommodate advances in technology and provide uniformity among the circuits, and now provides the specific—and only[1]—basis for sanctions for spoliation of ESI. To succeed, the moving party must prove the following three elements: First, the nonmoving party should have

---

[1] The Advisory Committee Notes make clear that the 2015 amendment forecloses a court from imposing sanctions for spoliation of ESI under that basis. *See Newberry v. Cty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018) (holding that the 2015 amendment to Rule 37(e) "foreclose[d] reliance on inherent authority" for sanctioning spoliation of ESI) (quoting Fed. R. Civ. P. 37 advisory committee's note to the 2015 Amendment).

preserved the ESI in the anticipation or conduct of litigation. Fed. R. Civ. P. 37(e). Second, the nonmoving party lost the ESI because it failed to take reasonable steps to preserve it. *Id.* Third, additional discovery cannot restore or replace the ESI. *Id.*

When a moving party satisfies these three prerequisites, two kinds of sanctions are available, but each requires proof of an additional element. Fed. R. Civ. P. 37(e). On the one hand, if the spoliation prejudiced the moving party, then the Court may order measures no greater than necessary to cure the prejudice. *Id.* On the other hand, harsher sanctions are available if the moving party shows that the nonmoving party acted with the intent to deprive the moving party of the information's use in the litigation. *Id.* Upon such proof, the Court may (1) presume that the lost information was unfavorable to the party, (2) instruct the jury that it may or must presume the information was unfavorable to the party, or (3) dismiss the action or enter a default judgment. *Id.*

Plaintiff sent Defendant Steven Rechenmacher a letter to "[d]eliver to the undersigned all [Plaintiff's] information in your possession, custody or control, including physical copies, electronic records, or copies in any other format" and to "[d]estroy or permanently delete any copies of [Plaintiff's] Information, including by means of physical destruction and, in the case of electronically stored information, forensic scrubbing of any laptops, electronic devices, computers, and servers used by you." (ECF No. 3 Ex. 2.) Defendant Steven Rechenmacher admits that he wiped his computer of all Plaintiff's information without sharing that information with Plaintiff, which he claims complied with the instructions in the letter. However, the letter, as a whole, demanded that Defendants turn over all of its information to Plaintiff's counsel and *then* delete any copies—not to delete everything.

While some of this evidence was replaced by the Sirco copies, it will only show the information that Defendants put onto Defendant Otodata's servers and not what Defendant Steven Rechenmacher personally took on his computer. Lastly, the Court finds that this prejudices

Plaintiff as it goes to the heart of the issue of whether Defendants still retain the Plaintiff's trade secrets. Thus, an adverse inference is appropriate, and Plaintiff has satisfied this element.

### C. The Degree of Hardship to the Parties

The Court finds that the balance of hardships weighs in favor of Plaintiff. In cases where a plaintiff has shown a defendant is likely misappropriating a trade secret, courts have routinely held that the degree of hardships favors the plaintiff. *See, e.g.*, *WeRide Corp.*, 379 F. Supp. 3d at 854. Inasmuch as the order merely enjoins Defendants from profiting off Plaintiff's trade secrets, Defendants are not harmed. *See Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (holding that an injunction that requires a party to comply with law is not a burden). If, as Defendants claim, they do not currently possess Plaintiff's trade secrets or are not using them, then imposition of this injunction will not harm Defendants. Conversely, even if Defendants are using Plaintiff's trade secrets, imposing this injunction will not harm any of Defendants' legitimate business and will only protect Plaintiff's rights.

However, Plaintiff also seeks to enjoin Defendants from soliciting any client who Defendants Steven and Brian Rechenmacher learned of through their employment with Plaintiff. This provision of the injunction may enjoin potential legitimate business of Defendants by proscribing solicitation of entities Defendant Otodata already identified as potential clients. Furthermore, absent enforceable agreements to the contrary, past employees are generally allowed to compete with their past employer. *Shores v. Glob. Experience Specialists, Inc.*, 422 P.3d 1238, 1241 (Nev. 2018).

Thus, the Court will tailor the injunction to include only clients that Defendants Steven and Brian Rechenmacher served or learned of while employed by Plaintiff. If they solicit existing clients of Plaintiff, they will do so knowing the products that these clients purchased from Plaintiff, the details of these products, and the price that these clients paid for the products. Defendants'

solicitation of these clients with this information at hand would violate Plaintiff's protected trade secrets. *Finkel v. Cashman Prof'l, Inc.*, 270 P.3d 1259, 1264 (Nev. 2012); *see N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 47 (2d Cir. 1999) (upholding an injunction not to solicit past employer's clients when past employer showed that employees were likely misappropriating its trade secrets); *Prot. Techs., Inc. v. Ribler*, No. 3:17-cv-00144-LRH-WGC, 2017 WL 923912, at *3 (D. Nev. Mar. 8, 2017) (imposing a temporary restraining order proscribing solicitation of past employer's clients when it showed that past employee likely misappropriated its trade secrets). Additionally, the injunction shall not extend to clients that Defendants have previously served substantial business to as well. Thus, the Court finds that, in total, the balance of hardships favors Plaintiff.

### D. The Public Interest

Additionally, the public interest also favors imposing the injunction. As this District has held, "there is a strong public interest in protecting trade secrets, as evidenced by the existence of the DTSA and [NUTSA]." *Ribler*, No. 3:17-cv-00144-LRH-WGC, 2017 WL 923912, at *3. Accordingly, the Court finds that Plaintiff has satisfied the requirements of imposing a preliminary injunction on Defendants and grants the motion.

### E. Scope of Injunction

Defendants argue that the scope of Plaintiff's proposed injunction is too broad. Plaintiff requests that this Court issue an order stating:

(1) Defendants must not directly or indirectly solicit, by mail, phone, electronic communication, personal meeting, or any other means, any Plaintiff customer who the Rechenmachers served or whose name became known to the Rechenmachers during their employment with Plaintiff and/or through their misappropriation of Plaintiff's confidential and trade secret information. Solicit means to initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging, or requesting any Plaintiff customer, to withdraw, curtail, or cancel any of its business or relations with Plaintiff.

(2) Defendants must not directly or indirectly use, disclose, or transmit for any purpose Plaintiff's documents, materials, trade secrets, and/or confidential

or proprietary information pertaining to Plaintiff, its employees, its operations, and/or its customers.

(ECF No. 16.)

First, Defendants claim that preventing them from soliciting all clients that Defendants Steven and Brian Rechenmacher served or learned of during their employment is too restrictive. As discussed above, the Court agrees that this provision may include clients who Defendant Otodata already identified as potential clients or previously served. Defendants' solicitation of these clients would not, in and of itself, infringe on Plaintiff's protected trade secret rights; however, solicitation of these clients utilizing Plaintiff's trade secrets would. To address Defendants' concern, the Court ordered the parties to exchange their client lists among counsel to in an effort to allow tailoring the injunction so as to minimize the harm to legitimate business.

The parties have exchanged lists of clients; however, Defendants argue that Plaintiff's list is overbroad. Plaintiff's purportedly list (ECF 83 Ex. 11) includes forty-two of Otodata's preexisting customers and ninety-five clients that Defendants Steven and Brian Rechenmacher never served while employed with Plaintiff. (Supp. Smith Decl., ECF No. 81 at ¶¶ 2–6.) The parties have not finished negotiations and discovery on the clients that need to be included in this injunction. Thus, the Court holds that the injunction shall include the entirety of Plaintiff's list of clients except for Canadian clients whose products are located in Canada. Furthermore, the Court will entertain motions to add to or exclude from the list upon further discovery and negotiations.

Second, Defendants claim that preventing them from transmitting any document of Plaintiff's—including publicly known information—is overreaching. The Court agrees and limits the provision to confidential information including current and prospective customers, technology, product deployment strategies, marketing strategies, product trials, and customer profitability information.

Lastly, the proposed injunction would extend to Defendant Otodata's "confederates" and "any person or entity acting in concert or participation" with it. (ECF No. 16 at 2:23–24.) Defendant Otodata has many third-party vendors who sell Defendant Otodata's products without consulting Defendant Otodata. (ECF No. 70 at ¶ 26(b).) The Court agrees that the injunction should not extend to these third-party vendors.

**F.     Security**

The Court initially ordered Plaintiff to post a bond of $5,000 in continuing the temporary restraining order. Since the injunction hinders potential legitimate business as discussed above, there is a definite threat of harm to the Defendants. Accordingly, the Court increases the imposition of a bond to a total amount of $10,000, so Plaintiff should deposit an additional $5,000.

**CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's Motion for a Preliminary Injunction (ECF No. 3) is GRANTED.

IT IS FURTHER ORDERED that Defendants must not directly or indirectly solicit, by mail, phone, electronic communication, personal meeting, or any other means, any of Plaintiff's clients that Plaintiff identified on the client list provided to Defendants (ECF 83 Ex. 11) as limited above. "Solicit" means to initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging, or requesting any of Plaintiff's customers to withdraw, curtail, or cancel any of its business or relations with Plaintiff.

IT IS FURTHER ORDERED that Defendants must not directly or indirectly use, disclose, or transmit, for any purpose, Plaintiff's trade secrets, and/or confidential or proprietary information pertaining to Plaintiff, its employees, its operations, and/or its customers.

IT IS FURTHER ORDERED that this injunction shall not extend to third-party vendors who are not employed by Defendant Otodata but sells its products.

IT IS FURTHER ORDERED that this preliminary injunction order be and is hereby conditioned upon Plaintiff filing with the Clerk of this Court, no later than 5:00 P.M. on March 24, 2020, an additional undertaking in the form of a bond, a certified cashier's or attorney's check, or cash, in the amount of $5,000 to secure the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained hereby.

IT IS FURTHER ORDERED that Plaintiff's Motion to Permit the Filing of a Supplemental Brief (ECF No. 74) is GRANTED.

IT IS SO ORDERED.

Dated March 23, 2020.

_____
ROBERT C. JONES
United States District Judge